**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

IN RE:

**RICHARD B. PEARL**                                                                        **CASE NO. 16-20305**
                                                                                                            **CHAPTER 13**

       **DEBTOR**

_____

**RICHARD W. FELDMAN,**                                                      **PLAINTIFF/**
*individually and as an assignee of*                      **COUNTERCLAIM DEFENDANT**
*claims by Riverfront Diet Clinic, Inc.*

**v.**                                                                                            **ADV. NO. 16-2006**

**RICHARD B. PEARL**                                                            **DEFENDANT/**
                                                                                       **COUNTERCLAIM PLAINTIFF**

---

### MEMORANDUM OPINION

This matter is before the Court on Plaintiff Richard W. Feldman's Motion to Dismiss [ECF No. 11 ("Motion")] and supporting Memorandum [ECF No. 12 ("Memorandum" or "Mem.")] seeking dismissal of Debtor/Defendant Richard B. Pearl's Counterclaim.  Feldman filed this adversary proceeding seeking a judgment that his claims against Debtor are nondischargeable.  In response, Debtor filed an Answer and Counterclaim [ECF No. 6 ("Counterclaim")] against Feldman, seeking redress for alleged conversion, violations of Kentucky corporate law, oppression of a minority shareholder, and breach of contract.  Feldman now moves the Court to dismiss Debtor's Counterclaim on the grounds that it fails to state a claim upon which relief can be granted.  The Court having reviewed the record, heard arguments of counsel, and being otherwise sufficiently advised, finds that Feldman's arguments are well-founded and, for the reasons set forth herein, will grant the Motion.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding.  28 U.S.C. § 1334(b).  Venue is proper in this District.  28 U.S.C. § 1409.  The claims asserted in the Complaint alleging nondischargeability of particular debts pursuant to 11 U.S.C. §§ 523(a)(2), (4), and/or (6) are core proceedings under 28 U.S.C. § 157(b)(2)(I).  Debtor pled that the Counterclaim is core and impliedly consented to this Court's entry of final orders on the Counterclaim.  Feldman expressly consented to this Court entering final orders or judgment on the Counterclaim.

## STANDARD OF REVIEW

Civil Rule 12(b)(6),[1] applicable in adversary proceedings by Bankruptcy Rule 7012(b), contemplates a defense on the basis that a complaint or counterclaim "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Civil Rule 8(a)(2), applicable in adversary proceedings by Bankruptcy Rule 7008(a), requires that "[a] pleading that states a claim for relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In analyzing the pleading requirement of Civil Rule 8(a)(2) in connection with a motion to dismiss, the United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do' . . . . [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  In defining the "plausibility" standard, the Supreme Court stated,

---

[1] References to the Federal Rules of Civil Procedure will hereinafter appear as "Civil Rule ___," and references to the Federal Rules of Bankruptcy Procedure will appear as "Bankruptcy Rule ____."

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

. . . .

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 678-79 (citations omitted) (internal quotations marks omitted).  "If it appears beyond doubt that the plaintiff's complaint does not state facts 'sufficient to state a claim that is plausible on its face,' then the claims must be dismissed."  *Preferred Auto Sales, Inc. v. DCFS USA, LLC,* 625 F. Supp.2d 459, 462 (E.D. Ky. 2009) (citations omitted).  "[D]ismissal with prejudice and without leave to amend is . . . appropriate [if] it is clear on de novo review that the complaint could not be saved by amendment."  *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (quoting *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003)).

## BACKGROUND

When considering the Motion, the Court accepts all factual allegations in the Counterclaim as true.  *Twombly*, 550 U.S. at 555.  Debtor alleges the relationship between the parties and facts relevant to the Counterclaim as follows:

Riverfront Diet Clinic, Inc. ("RDC"), a Kentucky corporation, previously provided diet services to patients in the greater Cincinnati, Ohio area.  RDC was formed on April 11, 1996,

dissolved by the Kentucky Secretary of State on September 28, 2013, and reinstated on June 11, 2015. RDC is currently inactive and in bad standing with the Secretary of State.

Debtor was the sole shareholder of RDC from its formation through February 16, 2010. RDC had good and valuable assets as of that date, including bank accounts with aggregate balances totaling approximately $144,000 that RDC generated through operations while under Debtor's sole control and ownership. A portion of those funds represented income that Debtor earned from RDC in 2009 but had not yet been paid as of February 16, 2010. Debtor's regular practice during his sole ownership was to take his distributions at the time he filed the corporate tax returns and paid its debts. Also as of February 16, 2010, RDC owed Debtor for loans he had made to RDC.

On or about February 17, 2010, Debtor entered into a "shareholder ownership arrangement" with his cousin, Feldman. As of that date, Feldman and Kevin Henderson, a non-party to this action, each owned one-third of RDC. Debtor owned the remaining one-third of RDC. Neither Feldman nor Henderson paid anything for their shares in RDC, and Debtor received no other consideration for the transfer of his shares. At some point in 2013, Feldman acquired Henderson's interests in RDC and thereafter owned two-thirds of the shares in RDC.

Feldman had a relationship with Doctor's Diet Clinic ("DDC"), and he treated RDC as a franchise of DDC, although no franchise agreement ever was created. Feldman directed that all funds due to him as an RDC shareholder were to be paid to DDC. Feldman also charged 6% of the gross receipts of RDC as a management fee payable to DDC. From June 2010 to October 2014, RDC paid DDC in excess of $350,000 in management fees and shareholder distributions not reported as W-2 income to Feldman. During that same timeframe, RDC paid additional

4

funds to Feldman that were reported as W-2 income.  Any loans DDC made to RDC also were

repaid.  The payments and distributions to Feldman and DDC exceeded amounts paid to Debtor.

Feldman held an RDC shareholder meeting during which he acquired certain claims of

the company.  He held the meeting at a time when he knew that Debtor was extremely ill and

could not attend.  Feldman caused RDC to terminate Debtor's employment in 2014.  Feldman

also terminated Debtor's membership on the RDC board.  Feldman established a separate

corporation, Doctor's Diet Clinic of Greater Cincinnati, to which the assets of RDC were

transferred.  RDC has not been dissolved, nor has the value of Debtor's shares in RDC been

addressed.

## PROCEDURAL HISTORY

Debtor filed a chapter 13 bankruptcy case on March 11, 2016, and Feldman commenced

this adversary proceeding on July 18, 2016.  Debtor filed a chapter 13 plan on March 25, 2016,

and Feldman objected to confirmation.  The confirmation hearing is being held in abeyance until

the conclusion of this adversary proceeding or until a party in interest files a request for a

confirmation hearing.  Debtor's omnibus objection to Feldman's three proofs of claim filed in

Debtor's bankruptcy case also is pending.

## LAW AND ANALYSIS

**I.      Count One Fails to State a Claim for Conversion upon which Relief Can Be Granted
        and Shall Be Dismissed with Prejudice.**

Count One of the Counterclaim asserts that Feldman converted Debtor's stock in RDC by

taking it and not paying for it, which caused damage to Debtor.  Debtor represented at the

hearing held on the Motion that he does not oppose the dismissal of Count One.  That dismissal

is with prejudice for the following reasons.

To establish the tort of conversion under Kentucky law, a plaintiff must prove that:

> (1) the plaintiff had legal title to the converted property; (2) the
> plaintiff had possession of the property or the right to possess it at
> the time of the conversion; (3) the defendant exercised dominion
> over the property in a manner which denied the plaintiff's rights to
> use and enjoy the property and which was to the defendant's own
> use and beneficial enjoyment; (4) the defendant intended to
> interfere with the plaintiff's possession; (5) the plaintiff made
> some demand for the property's return which the defendant
> refused; (6) the defendant's act was the legal cause of the plaintiff's
> loss of the property; and (7) the plaintiff suffered damage by the
> loss of the property.

*Baciomiculo, LLC v. Nick Bohanon, LLC*, 498 S.W.3d 790, 795 n.5 (Ky. Ct. App. 2016) (citing

*Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)

(quoting 90 C.J.S. *Trover and Conversion* § 4 (2004)).

Feldman cites *Gross v. Citizens Fidelity Bank of Winchester*, 867 S.W.2d 212, 215 (Ky.

Ct. App. 1993) for the proposition that "a conversion claim fails as a matter of law when the

complaining party consents to the transfer of the property that is the subject of the conversion

claim." [Mem. p. 7.]  The Counterclaim references an RDC "shareholder ownership

arrangement" between Feldman and Debtor that commenced on or about February 17, 2010.

Feldman asserts that the "shareholder ownership arrangement" is the Voting Agreement that he

attached as Exhibit 1 to the Memorandum.  [ECF No. 12-1 ("Voting Agreement").]  Since it is

referenced in the Counterclaim, this Court may consider the Voting Agreement when evaluating

the Motion.[2]  *Century Indemn. Co. v. Special Metals Corp. (In re Special Metals Corp.)*, 317

B.R. 326, 329 (Bankr. E.D. Ky. 2004) (citation omitted).

---

[2] The Voting Agreement is dated February 17, 2010, and it appears to be signed by Feldman and Debtor.  Debtor has
not asserted that the Voting Agreement attached to Feldman's Memorandum is in any way inaccurate or that it is not
the "shareholder ownership arrangement" referred to in the Counterclaim.

The Voting Agreement defines RDC's "shareholders" as Richard B. Pearl, Kevin Henderson, and Richard Feldman, M.D. and states that they:

> . . . own all the shares of common stock of Riverfront Diet Clinic, Inc., a Kentucky corporation (the "corporation") as follows:
>
> | a. | Richard B. Pearl | 33.333% |
> | b. | Kevin Henderson | 33.333% |
> | c. | Richard Feldman, M.D. | 33.333% |

[Voting Agreement p. 1.]  The RDC Voting Agreement confirms that the "the shareholders desire[d] and enter[ed] into [the] agreement to set forth their respective agreements to vote their shares of stock in the corporation as provided herein."  [*Id*.]  To that end, it states that:

> [d]uring the term of [the] agreement, in an effort to avoid deadlocks in corporate action, each shareholder agrees that the voting rights for the stock in the corporation shall be allocated as follows:
>
> | a. | Richard B. Pearl | 24.5% |
> | b. | Kevin Henderson | 24.5% |
> | c. | Richard Feldman, M.D. | 51% |

[*Id.*]

"Kentucky law recognizes that when a plaintiff consents to a transfer of property, he no longer has a cause of action for conversion."  *Pioneer Res. Corp. v. Nami Res. Co., LLC*, No. 6:04-465-DCR, 2006 WL 1778318, at *11 (E.D. Ky. June 26, 2006) (citing *Citizens Fidelity*, 867 S.W.2d at 214).  The Voting Agreement unequivocally establishes that Debtor not only knew that Feldman held shares in RDC but also consented to the allocation of shares and voting rights among Feldman, Debtor, and Henderson.  There are no contrary facts alleged.  These provisions are wholly inconsistent with any contention that Debtor did not consent to Feldman's possession of RDC stock as of February 17, 2010 that Debtor owned prior to that date.

Consent is an absolute defense to a conversion claim under Kentucky law. Debtor's consent to Feldman's ownership is pled and evidenced by the Voting Agreement. This claim cannot be saved by amendment, and dismissal of Count One with prejudice under Civil Rule 12(b)(6) is appropriate.

## II. Count Two Fails to State a Claim for Violation of K.R.S. § 271B.8-310 upon which Relief Can Be Granted and Shall Be Dismissed with Prejudice.

Count Two of the Counterclaim is solely grounded in Feldman's alleged violation of K.R.S. § 271B.8-310.[3] Specifically, the Counterclaim asserts that Debtor was deprived of funds "that were properly due to him as a shareholder and director of [RDC]." [Countercl. ¶ 80.] In support, Debtor contends that the statute applies to RDC because it is a Kentucky corporation and that the statute requires transactions between RDC and DDC to be disclosed, ratified, and fair to RDC. Debtor alleges that such transactions were not disclosed or ratified and were not fair to RDC or its shareholders. Instead, Debtor asserts that the transactions gave unfair preference to one shareholder, Feldman.

### A. K.R.S. § 271B.8-310 Does Not Provide an Individual Cause of Action for Debtor as a Shareholder or Director.

K.R.S. § 271B.8-310 establishes when a "conflict of interest transaction" is voidable by a corporation. A "conflict of interest transaction" is defined as "a transaction with the corporation in which a director of the corporation has a direct or indirect interest." KY. REV. STAT. § 271B.8-310(1). Feldman argues that Debtor cannot assert an individual claim under K.R.S.

---

[3] Count Two references K.R.S. § 271B.8-*130*, but Debtor's counsel stated at the hearing held on the Motion that Debtor intended to assert the cause of action under K.R.S. § 271B.8-*310*.

§ 271B.8-310 against Feldman for breaching fiduciary duties as an RDC director.[4]   The Court

agrees.

When interpreting a statute, the Court's "duty is to ascertain and give effect to the intent

of the General Assembly." *Beckham v. Bd. of Educ. of Jefferson Cty.*, 873 S.W.2d 575, 577 (Ky.

1994). The Court is "not at liberty to add or subtract from the legislative enactment nor discover

meaning not reasonably ascertainable from the language used." *Id.* (citation omitted). "If the

language of a statute is 'clear and unambiguous and if applying the plain meaning of the words

would not lead to an absurd result, further interpretation is unwarranted.'" *Palmer v. Vanderbilt*

*Mortgage & Finance (In re Walling)*, Ch. 7 No. 10-51619, AP No. 10-5076, 2010 WL 5421148,

at *2 (Bankr. E.D. Ky. Dec. 20, 2010) (citing *Autozone, Inc. v. Brewer,* 127 S.W.3d 653, 655

(Ky. 2004)).

On its face, K.R.S. § 271B.8-310 does not create a cause of action that a shareholder or a

director may assert. Instead, "KRS 271B.8-310 merely delineates transactions that are *voidable*

*by the corporation*—that is, transactions that a corporation has a *right* to void if it so chooses."

*Gross v. Adcomm, Inc.*, 478 S.W.3d 396, 401 (Ky. Ct. App. 2015) (emphasis in original). This is

evidenced by the statute's plain language setting forth situations in which "[a] conflict of interest

transaction shall not be voidable by the *corporation* . . . ." KY. REV. STAT. § 271B.8-310(1)

(emphasis added).

The word "shareholder" only is referenced twice in the statute. Shareholders are

referenced in K.R.S. § 271B.8-310(1)(b), which protects an otherwise conflicted transaction

---

[4] Count Two does not allege in what capacity that Feldman is liable to Debtor, but Debtor's Response states that
Count Two is "related to duties owed by . . . Feldman as a director of [RDC]." [ECF No. 17 ("Response" or
"Resp.") p. 8.] "[I]t is axiomatic that the complaint [or counterclaim] may not be amended by the briefs in
opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)
(citations omitted). The Court will consider Count Two in the context of a claim against a director for purposes of
analysis but recognizes that "[a] complaint's insufficiency 'may not be amended by the briefs in opposition to a
motion to dismiss.'" *Brown v. Accenture Fed. Servs.*, No. 15-24-GFVT, 2016 WL 3298543, at *5 n.5 (E.D. Ky.
June 13, 2016) (citations omitted).

when it was "disclosed or known to the shareholders entitled to vote," and said shareholders

"authorized, approved, or ratified the transaction."  The other reference to shareholders is in

K.R.S. § 271B.8-310(4), which explains which votes are to be counted for purposes of

subsection (1)(b).  Directors are given a similarly-limited role in the K.R.S. § 271B.8-310

process.  K.R.S. § 271B.8-310(1)(a) protects an otherwise conflicted transaction when the

transaction and subject interest were "disclosed or known to the board of directors or a

committee of [same]," and those parties "authorized, approved, or ratified the transaction."

K.R.S. § 271B.8-310(3) explains which votes are to be counted for purposes of subsection (1)(a).

This Court is to "assume that the '[Legislature] meant exactly what it said, and said

exactly what it meant.'"  *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005)

(citation omitted).  It is clear that the General Assembly only meant that a corporation, and not

its shareholders or directors, is authorized to seek relief under K.R.S. § 271B.8-310.  Count Two

fails to state a claim upon which relief can be granted.

### B.    Count Two Does Not Assert a Derivative Claim upon which Relief Can Be Granted.

Feldman further asserts that Count Two cannot survive as a derivative claim, *i.e.* a claim

asserted by Debtor on behalf of RDC.  Under Kentucky law, "[t]he general rule is that '[a]

shareholder's rights are merely derivative unless he can show violation of a duty owed directly to

him.'"  *Sahni v. Hock*, 369 S.W.3d 39, 47 (Ky. Ct. App. 2010) (quoting *NBD Bank v. Fulner*,

109 F.3d 299, 301 (6th Cir. 1997)).  Based on this premise, and because Debtor lacks standing to

assert an individual claim under K.R.S. § 271B.8-310, Feldman argues that Count Two

improperly asserts a derivative claim on behalf of RDC, not a claim that entitles Debtor to

individual relief.  More specifically, Feldman asserts that Debtor "purports to assert a claim on

behalf of RDC . . . against DDC," neither of which are parties to this action, and that

10

"[r]ecoveries, if any, would flow to RDC, not [Debtor]."  [Mem. p. 9.]  Therefore, Feldman

posits that "Count Two is, at most, an impermissible derivative claim that must be brought by

RDC . . . ."  *Id.*

The Kentucky Court of Appeals has described a derivative action as follows:

> Simply put, a derivative proceeding is an action brought by a
> *shareholder* "in the right of a corporation" – not by a corporation
> itself – to recover corporate losses or to protect the corporation's
> interests on behalf of a corporation . . . .  Stated differently, it is a
> statutory remedy available to disappointed shareholders when a
> corporation's board of directors ignores or wrongfully refuses to
> enforce the corporation's right to redress a corporate injury and has
> effectively blocked the corporation from taking any direct
> action . . . .  Derivative actions are also initiated by shareholders in
> circumstances where it would be futile to even ask the board to
> cause the corporation to enforce its rights.  This is often the case
> when, by asking the board to cause the corporation to enforce its
> rights, a shareholder would be effectively asking a majority of the
> board of directors to *sue themselves.*

*Adcomm*, 478 S.W.3d at 402 (citations omitted) (emphasis in original).  Against that background,

the *Adcomm* court noted that initiating a derivative proceeding is the appropriate course of action

where a corporation is aggrieved, and the party who allegedly injured the corporation controls

half of its board and does not want the corporation to pursue litigation.  *Id.* at 403 (citations

omitted).  This is the situation Debtor describes, to wit:  "there were only two shareholders

remaining in RDC," and "the corporation would never be authorized by its majority shareholder

to take action against the majority owner."  [Resp. p. 7.]  That RDC has been administratively

dissolved does not alter this outcome, since "administrative dissolution does not terminate the

existence of an entity, preclude it from winding up or liquidating its business and affairs, or

terminate the authority of its registered agent."  *Adcomm* at 398 n.5 (citing KY. REV. STAT.

§ 14A.7-020(3)).

11

However, to assert a derivative claim, a shareholder must first allege and satisfy the

prerequisites in Civil Rule 23.1, applicable to adversary proceedings by Bankruptcy Rule 7023.1,

and also those in K.R.S. § 271B.7-400.  Among other things, those prerequisites require that the

action be "brought in the right of [RDC]" (*i.e.* that RDC be a party to the suit) and that Debtor

"allege with particularity the demand made, if any, to obtain action by the [RDC] board of

directors and either that the demand was refused or ignored or why he did not make the

demand."  KY. REV. STAT. § 271B.7-400(1), (2); *see also* FED. R. CIV. P. 23.1(a), (b).  Moreover,

the action must seek relief that will inure to RDC derivatively, not individual personal relief for

Debtor.  Count Two does not allege these prerequisites and therefore does not properly assert a

derivative claim on behalf of RDC.

### C.    Count Two Shall Be Dismissed with Prejudice.

Debtor lacks statutory standing to assert a direct claim against Feldman for a violation of

K.R.S. § 271B.8-310.  This cannot be cured by amendment of the Counterclaim.  Further, any

derivative relief cannot inure to Debtor's bankruptcy estate, only to RDC's benefit.  Count Two

shall be dismissed with prejudice.

### III.   Count Three Fails to State a Claim for "Minority Shareholder Oppression" upon which Relief Can Be Granted and Shall Be Dismissed with Prejudice.

Count Three of the Counterclaim asserts a claim for "oppression of a minority

shareholder" based on the premise that Feldman and Debtor owed duties to one another as

shareholders of a corporation and enjoyed rights and privileges associated with their ownership

of shares, including the right to participate in and enjoy the corporation's financial returns.

Debtor alleges that Feldman violated his rights to participate in the corporation in multiple ways,

specifically by:  (a) terminating Debtor from his employment with the corporation; (b) removing

Debtor from the board of directors; (c) removing Debtor's wife from the board of directors;

(d) refusing to declare distributions when the corporation was profitable; (e) denying Debtor

access to corporate information; (f) siphoning the remaining assets of RDC to DDC or another

entity controlled by Feldman; (g) entering into favorable contracts with Feldman's affiliates;

(h) usurping corporate opportunities; and (i) using corporate assets for personal benefit.  By

taking these actions, Debtor asserts that Feldman departed from standards of good faith and fair

dealing, which caused Debtor significant monetary losses.

**A.    Count Three Fails to State a Claim upon which Relief Can Be Granted as a Matter of Law.**

**i.    Corporate Shareholders Do Not Owe Duties to Other Shareholders under Kentucky Common Law.**

Entitled "Oppression to Minority Shareholder," "Count Three is based on violations of

common law duties owed by shareholders/directors, particularly majority shareholders."[5]

[Resp. p. 6.]  Count Three relies on the premise that Feldman, as the majority RDC shareholder,

owed a common law fiduciary duty to Debtor, as the minority RDC shareholder, and Feldman

breached that duty thereby injuring Debtor.  This claim fails as a matter of law because "[i]n

Kentucky, a stockholder does not owe a fiduciary duty."  *Griffin v. Jones*, 170 F.Supp.3d 956,

964 (W.D. Ky. 2016).   Although "[o]ther states have held that a stockholder may owe a

fiduciary duty in the special case of closely-held corporations . . . .  Kentucky has not adopted

this rule."  *Id.* (citing, *inter alia*, Thomas E. Rutledge, *Shareholders Are Not Fiduciaries:  A*

*Positive and Normative Analysis of Kentucky Law*, 51 U. Louisville L. Rev. 535, 535 (2013)

---

[5] Debtor does not contend that a Kentucky statute provides a basis for a minority shareholder oppression claim, nor does such a statute exist.  *See* Rutledge, *infra*, at 543 ("The [Kentucky] Business Corporation Act [K.R.S. Chapter 271B] is silent as to inter-shareholder fiduciary duties.")

(explaining the history of cases and legislation on this issue and advocating that Kentucky not

adopt such a rule)).[6]

Debtor's reliance on *Beha v. Martin*, 171 S.W. 393, 395 (Ky. 1914) in support of Count

Three is misplaced.  *Beha* is an action to contest the compensation paid to officers of a close

corporation who also served as directors.  Three of the company's four directors, who owned

substantially all the stock, voted to establish their officer salaries.  Two minority shareholders

then filed suit, seeking to enjoin the officers from collecting their salaries and to recover the

portion already paid.  The *Beha* court recognized that "directors, especially where they own a

majority of the stock of the corporation, are invested with large powers in the matter of the

selection of, and the salaries to be paid, officers of the corporation."  *Id.*  Courts will generally

not interfere with this "broad discretion," but under certain circumstances, "a court of equity, on

application by the minority stockholders, will review the reasonableness of the salaries allowed

the corporate officers by the directors, with the approval of the majority of the stockholders, and

. . . afford adequate relief . . . ."  *Id.*

Debtor cites *Beha* for the premise that "[it] is likewise well settled that the majority of the

stockholders, although they may deal with the assets of the company, cannot so deal with them

as to divide the assets, more or less, between themselves to the exclusion of the minority."  *Id.*

This language is *obiter dictum* and is unnecessary to the ultimate holding that the board action to

set the officers' salaries was invalid because officers cannot vote on their own salaries.  *Beha*

does not create a common law cause of action for minority shareholders against majority

shareholders, but rather demonstrates how minority shareholders can challenge decisions of a

---

[6] The *Griffin* court also cited *Estep v. Werner*, 780 S.W.2d 604, 609 (Ky. 1989), noting that "[i]n his dissent, Justice
Leibson argues that the *Estep* court erred in not joining the 'growing number' of states which have imposed
fiduciary duties upon stockholders in closely held corporations."

corporation's managing body.[7]  Notably, the *Beha* court did not discuss damages sustained by

the minority shareholders or any recovery to which they are entitled, which would be critical

parts of a ruling on any shareholder oppression claim.  Instead, *Beha* focuses on whether salaries

paid by the corporation to its officers were appropriately set and imposed the burden of proof on

the objecting shareholders.

Likewise, Debtor's reliance on *Urban J. Alexander Co. v. Trinkle*, 224 S.W.2d 923, 926

(Ky. 1949), is misplaced.  *Alexander* is a breach of fiduciary duty action brought by a

corporation, Urban J. Alexander Co., against its former officer and director, Trinkle, and a

former employee.  Trinkle pursued a business opportunity on behalf of the corporation that was

ultimately unsuccessful.  About a year later, Trinkle successfully pursued the same opportunity

for himself, and the corporation brought suit to recover the money that he made from it.  In

reaching its decision, the *Alexander* court discussed the duties that officers and directors owe to

corporations when pursuing business opportunities outside of the corporation.  *Alexander* does

not address whether shareholders owe duties to each other and provides no support for Debtor's

minority shareholder oppression claim.

In sum, Kentucky law does not impose duties between shareholders.

### ii.    Corporate Directors Do Not Owe Duties to Individual Shareholders under Kentucky Law.

Debtor attempts to avoid this result, stating in his Response that his "allegations . . . are

. . . related to duties owed by . . . Feldman as a *director* of [RDC]," rather than owed by Feldman

as a shareholder as pled in Count Three.  [Resp. p. 8 (emphasis added).]  First, this is not what

---

[7] *See, e.g., Venus Oil Corp. v. Gardner*, 50 S.W.2d 537, 538 (Ky. 1932) (citing *Beha* for the premises that "[t]he court may not intervene or interfere in the internal affairs of a corporation at the instance of minority stockholders unless its governing authorities have acted or are threatening to act fraudulently, in the broad sense, against them or have abused the implied trust reposed in officers and directors in such manner or to such extent as to warrant the interposition of equity" and that "[t]he burden is upon the objecting stockholders to establish affirmatively that compensation allowed was unreasonable and excessive.")

the Counterclaim alleges, and Debtor may not amend his Counterclaim via his Response.  *Car Carriers*, 745 F.2d at 1107.  Second, claims by Debtor against Feldman in his capacity as an RDC director rather than as a shareholder, even if they were asserted, would fail to state a claim upon which relief can be granted.  "[C]orporate assets are the property of the corporation, not the shareholders," and under Kentucky law, "[o]fficers and directors owe fiduciary duties to the corporation, not the shareholders."  *Adcomm*, 478 S.W.3d at 400 (citing *Owens v. C.I.R.*, 568 F.2d 1233, 1238 (6th Cir. 1977)).  "Thus, if corporate assets are misappropriated, or if a corporate officer or director otherwise breaches a fiduciary duty, it is an injury to the corporation, not a shareholder."  *Id.* (citing *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F.Supp.2d 707, 716 (E.D. Ky. 2009)).

Debtor's reliance on *Baptist Physicians Lexington, Inc. v. The New Lexington Clinic, P.S.C.*, 436 S.W.3d 189 (Ky. 2013, *modified* Feb. 20, 2014) is misplaced.  Based on *Baptist*, Debtor asserts that "a director, who holds a fiduciary relationship to the company and its shareholders, is subject to common law causes of action for failure to honor those fiduciary duties."  [Resp. p. 8.]  This is incorrect.  *Baptist* holds that the existence of Kentucky statutes regarding the duties of corporate directors "does not abrogate common law fiduciary duty claims against directors in Kentucky . . . ."  *Baptist*, 436 S.W.3d at 191.   It does not provide that corporate directors in Kentucky owe fiduciary duties directly to shareholders.  In short, *Baptist* does not create or acknowledge common law director duties to shareholders; it simply clarifies that statutory law does not abrogate common law.

> ### iii.    Count Three Does Not Assert a Derivative Claim upon which Relief May Be Granted.

Although not specifically pled as such, as a practical matter and as Feldman points out, Debtor asserts claims against Feldman in Count Three both in his individual capacity and on

behalf of RDC.  Count Three asserts claims that Feldman:  "[s]iphon[ed] the remaining assets of [RDC] to Doctor's Diet Clinic of Greater Cincinnati, Inc. or such other entity controlled by Feldman"; "[e]nter[ed] into favorable contracts with the affiliates of . . . Feldman"; "[u]surp[ed] corporate opportunities"; and "us[ed] corporate assets for personal benefits."  [Countercl. ¶¶ 84(F)-(I).]  The Counterclaim as a whole seeks "return of all funds taken from [RDC] to the other business enterprises of . . . Feldman."  [*Id.* p. 12.]   For the same reasons discussed above with regard to Count Two, Count Three does not properly assert a derivative claim on behalf of RDC.

## B.    Count Three Fails to Factually Allege a Plausible Claim for Minority Shareholder Oppression.

Moreover, even if a cause of action for minority shareholder oppression existed under Kentucky law, Count Three does not include factual allegations sufficient for this Court to find "more than a sheer possibility that [Feldman] has acted unlawfully."  *Iqbal*, 556 U.S. at 678. Count Three includes a list of conclusory wrongs that Feldman allegedly perpetrated to Debtor's (or RDC's) detriment.  Neither the alleged wrongs that injured Debtor directly nor the alleged wrongs that injured RDC are based on factual allegations sufficient to infer plausible claims.

Debtor alleges that Feldman violated his rights by terminating him from his employment with RDC and removing him from the RDC board of directors, but he fails to allege a factual basis supporting a plausible inference that he was wrongfully terminated or removed.  Similarly, Debtor alleges that Feldman violated his rights by removing Debtor's wife from the RDC board of directors, but he fails to allege facts supporting a plausible inference that her removal was wrongful, let alone how her removal directly injured him.  Debtor also alleges that Feldman violated his rights by refusing to declare distributions when RDC was profitable, but he fails to allege facts supporting a plausible inference that he requested and was entitled to receive

distributions or that Feldman (as opposed to RDC's board) was obligated to declare same.

Debtor further alleges that Feldman violated his rights by denying him access to information

regarding RDC, but Debtor fails to allege what information he demanded, that Debtor did not

otherwise have access to the information, that Feldman refused the demand, or any facts

supporting a plausible inference that any such refusal was wrongful.

The remaining alleged wrongful acts, taken as true, would cause injury to the corporation,

RDC, not Debtor individually.  Debtor alleges that Feldman siphoned RDC's remaining assets to

DDC or another entity that he controlled, but not what assets were siphoned or whether any

consideration was given for them.  Debtor alleges that Feldman entered into favorable contracts

with Feldman's affiliates, but he omits the identities of the affiliates, the nature of any such

contracts, or why those terms were favorable to the affiliates and unfavorable to Debtor or RDC.

Debtor alleges that Feldman usurped corporate opportunities, but he does not state the nature of

those opportunities or the circumstances of the usurpation.  Debtor alleges that Feldman used

corporate assets for personal benefit, but he fails to allege which assets were used, why such use

was wrongful, or the personal benefit that Feldman gained as a result.  For the reasons stated

above, Debtor may not seek personal relief for injuries to RDC.  But, even if he could, none of

these allegations is supported by facts sufficient to state a claim on behalf of RDC that is

plausible on its face, and this Count therefore fails to satisfy the requirements of Civil Rule

8(a)(2) under *Twombly* and *Iqbal*.

### C.    Count Three Shall Be Dismissed with Prejudice.

As reviewed above, Kentucky common law does not recognize a claim for "minority

shareholder oppression," nor does Kentucky law impose fiduciary duties upon shareholders.

Amendment of Count Three cannot cure these infirmities, and dismissal of Count Three under

Civil Rule 12(b)(6) with prejudice is appropriate.

**IV.     Count Four Fails to State a Claim for Breach of Contract upon which Relief Can Be
Granted and Shall Be Dismissed with Prejudice.**

Count Four of the Counterclaim asserts that RDC's bylaws are a valid contract between

the shareholders, that Debtor gave good and valuable consideration for that contract in the form

of his skill and work within the company, and that Feldman failed to abide by the bylaws by

undertaking activities that undermined RDC's profitability and failing to make distributions to

shareholders when they were legally entitled.  Accordingly, Debtor asserts that he suffered

significant financial losses as result of Feldman's breaches of his duties under the bylaws.

Feldman attached the Amended and Restated Bylaws of RDC dated March 2013 and signed by

Feldman, Debtor, and Elaine Pearl as Exhibit 2 to the Memorandum.  [ECF No. 12-2

("Bylaws").][8]  He contends that the Counterclaim fails to plausibly state a claim for breach of

contract under the Bylaws.

Debtor relies upon Delaware law for the premise that modern corporate "bylaws are

contracts among a corporation's shareholders to which general rules of contract interpretation

apply," citing *Airgas, Inc. v. Air Products & Chemicals, Inc.*, 8 A.3d 1182, 1188 (Del. 2010),

and *Centaur Partners, IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 928 (Del. 1990).  [Resp. p. 9.]

In turn, based on Kentucky contract law, Debtor asserts that the duties of good faith and fair

dealing are implied in every contract in Kentucky, including RDC's Bylaws.  Taken together,

Debtor asserts that these premises show that Feldman owed duties to Debtor as a shareholder

under RDC's Bylaws, that Feldman violated those duties by engaging in self-dealing that

---

[8] Debtor does not dispute the accuracy or relevancy of the Exhibit or its applicability to the recovery he seeks in
Count Four.  The Court may consider the Bylaws when evaluating the Motion because they were referenced in the
Counterclaim.  *Century Indemn.*, 317 B.R. at 329.

undermined RDC's profitability and failing to advance RDC's business, and that Debtor is entitled to damages as a result.

Feldman disputes that Delaware permits a shareholder to bring a breach of contract claim based on a corporation's bylaws against another shareholder, citing *Quantum Technology Partners II, L.P. v. Altman Browning and Company*, No. 08-CV-376-BR, 2009 U.S. Dist. LEXIS 114508 (D. Or. Dec. 8, 2009).

Under Kentucky law, "[t]he relationship of a corporation and its shareholders is contractual and the articles and bylaws are part of the contract." *Toler v. Clark Rural Elec. Co-op. Corp.*, 512 S.W.2d 25, 26 (Ky. 1974) (citing 18 AM. JUR. 2d *Corporations* § 481). The United States District Court for the Western District of Kentucky provided an instructive summary of Kentucky contract law:

> Generally, a breach of contract claim under Kentucky law requires: (1) a valid and enforceable contract; (2) a breach of that contract; and (3) damages caused by that breach. Unless the statute of frauds applies, a contract may be written or oral. Of course, "[n]ot every agreement or understanding rises to the level of a legally enforceable contract." Rather, a valid contract requires (1) offer and acceptance, (2) full and complete terms, and (3) consideration. To satisfy the second element, 'the terms of a contract must be sufficiently complete and definite to enable the court to determine the measure of damages in the event of breach." And to satisfy the third, the general rule is that "[m]utuality of obligations is an essential element of a contract, and if one party is not bound, neither is bound."

*Zeltiq Aesthetics, Inc. v. Medshare, Inc.*, No. 3:14-CV-213-CRS, 2015 WL 3447612, at *2 (W.D. Ky. May 28, 2015) (internal citations omitted).

Applying this law, the Court finds the Bylaws do not constitute an enforceable contract between the RDC shareholders. First, the Bylaws are signed by Debtor and Feldman in their capacities as officers and directors, not as shareholders. [Bylaws p. 5 ("It is hereby certified that on this date we are, respectively, the duly elected and qualified officers and directors of

Riverfront Diet Clinic, Inc. and that on this ___ day of March, 2013, the foregoing Amended and restated Bylaws were adopted by unanimous action of the board of directors.")]  As a result, the parties as shareholders did not agree to terms so as to create a contract between them.

Further, the Bylaws contain no terms that mandate action by the RDC shareholders.  The Bylaws describe logistical details for shareholder meetings and authorize (but do not require) shareholders to enter into certain agreements and take certain actions without a meeting.  Shareholders are not required to take any specific actions to operate RDC, nor do the Bylaws give them authority to manage RDC's business operations.  Instead, managerial authority is given to RDC's board of directors, and its president is tasked with putting the board's decisions into effect.

Although the Counterclaim alleges facts from which consideration for the contract can be inferred, neither the Counterclaim nor the Bylaws state any duties or obligations that one RDC shareholder owes to another RDC shareholder.  The Bylaws address actions that shareholders may take and events in which a shareholder may participate, but they do not *require* shareholder action.  Thus, the Bylaws do not set forth any terms "sufficiently complete and definite to enable the court to determine the measure of damages in the event of breach."  *Zeltiq Aesthetics*, 2015 WL 3447612, at *2.  Because the Bylaws, the only contract alleged, are not an enforceable contract between the RDC shareholders, Debtor's breach of contract claim fails as a matter of law.

Debtor's reliance on the implied duties of good faith and fair dealing does not rectify his inability to pursue a claim for breach of contract against Feldman based on the Bylaws.  Under Kentucky law, the implied covenant of good faith and fair dealing exists within every contract.  *Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11

(Ky. 2005) (citing *Ranier v. Mount Sterling Nat'l Bank,* 812 S.W.2d 154, 156 (Ky. 1991)).  The

covenant generally requires a party to a contract to perform his or her duties in good faith;

however, "[a] breach of the implied duty of good faith and fair dealing is an impossibility where

a contract has not yet been formed."  *Gresh v. Waster Services of America, Inc.*, 738 F. Supp.2d

702, 710 (E.D. Ky. 2010).  Here, where no plausible contract is alleged, no implied covenant of

good faith and fair dealing exists, and there is no plausible claim for breach of contract

predicated on that covenant.

  For the foregoing reasons, Count Four will be dismissed with prejudice.  As a matter of

law, Debtor cannot prevail on his breach of contract claim predicated solely on Bylaws that do

not constitute a contract between Debtor and Feldman in their capacities as RDC shareholders.

No factual amendment can rectify this deficiency, and dismissal of Count Four under Civil Rule

12(b)(6) with prejudice is appropriate.

**CONCLUSION**

  For the reasons stated herein, Feldman's Motion to Dismiss [ECF No. 11] is GRANTED.

A separate order will be entered.

22

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and
electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, March 08, 2017**
**(tnw)**